IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STANFORD S. KIRSCH,                                    Civ. No. 09-6211-AA

    Plaintiff,                    OPINION AND ORDER

  v.

TDY INDUSTRIES, INC., a
California corporation doing
business as ATI WAH CHANG,

    Defendant.

_____

Charles A. Ford
Charles A. Ford, PC
9450 SW Commerce Circle
Wilsonville, OR 97070-9626
   Attorney for plaintiff

David G. Hosenpud
Christine E. Thelen
Lane Powell, PC
601 SW Second Avenue, Suite 2100
Portland, OR 97204-3158
   Attorneys for defendant

AIKEN, Chief Judge:

Plaintiff filed suit alleging discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, Or. Rev. Stat. § 659A.112; Family Medical Leave Act (FMLA), 29 U.S.C. § 2601; and the Oregon Family Leave Act (OFLA), Or. Rev. Stat. § 659A.165. Based on the same underlying injury which plaintiff alleges caused his disability, plaintiff alleges workers' compensation discrimination under Or. Rev. Stat. §§ 659A.040 - 659A.049, and damages based on the common law tort of wrongful discharge. Defendant moves for summary judgment on all claims. Plaintiff moves for partial summary judgment on the FMLA claim. Both parties' motions are denied.

## I.    FACTUAL BACKGROUND

Plaintiff, Stanford S. Kirsch, worked for defendant TDY Industries, Inc., doing business as ATI Wah Chang (Wah Chang) from May 4, 2004 until his termination on July 10, 2008. Plaintiff held the position of Senior Technical Services Engineer for the entire duration of his employment with Wah Chang.

Throughout plaintiff's employment, he received thorough performance reviews at the end of every calendar year and also less detailed mid-year reviews. The year-end reviews consisted of two documents. The first was titled "Performance Planning and Appraisal" (PPA), which listed a number of general job responsibilities, the corresponding planned performance expectations for each responsibility, and the employee's actual performance rating for the

2 - OPINION AND ORDER

year. See generally Hosenpud Decl., Ex. 104. Performance was rated
at "exceeded expectations," "met expectations," "needs improvement,"
or "unacceptable."

The second document created for year-end reviews was titled
"Personal Traits and Characteristics" (PTC). This document charted a
list of qualities including: honesty, customer sensitivity, safety,
job knowledge, productivity, judgment, dependability, and attendance,
among others. See generally Hosenpud Decl., Ex. 105. Each quality
was rated at either "exceeded expectations," "met expectations,"
"needs improvement," or "unacceptable."

At the bottom, an overall rating set forth the cumulative review
appraisal, based on a scale of 1 through 5. A 3 rating, for "Full
Standard," was the threshold level for satisfactory performance. A 4
or 5 rating exceeded performance requirements, a 2 denoted
unsatisfactory, "Less than Full Standard" performance, and a 1 denoted
"Unacceptable" performance. The form also included boxes where the
employee could mark if he or she agreed with the appraisal or wished
to appeal.

Plaintiff's first evaluation was the mid-year review for 2004
which occurred three months after the beginning of plaintiff's
employment. The evaluation was generally satisfactory, but noted
plaintiff's need to improve in some areas of technical knowledge.

In January of 2005, plaintiff received his year-end review for
the year of 2004 and was appraised at "3, Full Standard." The PTC

3 - OPINION AND ORDER

document noted that plaintiff did not meet expectations in the job
knowledge category, "due to limited time (8 months) in the position."
Plaintiff indicated that he agreed with the appraisal. Plaintiff
received a ~3% merit-based salary increase as a result of the review.
See Hosenpud Aff., Ex. 105, p.2.

In May 2005, plaintiff suffered the first of two motor vehicle
accidents (MVA#1). The first accident was not job-related, and
therefore did not involve a worker's compensation claim.

Plaintiff received his mid-year 2005 review in July, just two
months after the accident. Plaintiff was still on medical leave due
to the accident at the time of the review. The review described
plaintiff as continuing to progress with regard to technical
knowledge, and noted several of his accomplishments. The review also
noted that plaintiff needed to improve his customer visit trip-
planning. Finally, the review acknowledged that plaintiff had been on
extended leave for more than ten weeks due to MVA#1. Plaintiff
indicated that he agreed with the appraisal.

On September 19, 2005, defendant approved plaintiff's "leave of
absence" under FMLA/OFLA from September 6, 2005 to September 16, 2005.
Second Kirsch Aff., Ex. 20, p.1.

In January 2006, plaintiff received his year-end review for 2005
and again was rated "3; Full Standard." Plaintiff was appraised as
meeting expectations in all areas, including job knowledge. Plaintiff
received "needs improvement" ratings on 3 of 4 items under the

4 - OPINION AND ORDER

"Technical Presentations & Publications," including: not submitting or
presenting a paper at a technical conference, inability to author
articles for "Outlook,"[1] and inability to complete datasheets.
Plaintiff was rated as having met expectations in all areas of the PPT
document.  Plaintiff indicated that he agreed with the appraisal.
Plaintiff received a merit-based ~3% salary increase as a result of
the review.

On April 4, 2006, plaintiff met with Danielle Erb, M.D., who
practiced at the "Brain Injury Rehabilitation Center" (BIRC) in
Portland.  According to Dr. Erb, BIRC is an accredited program focused
on providing comprehensive rehabilitation services for adults with
acquired brain injuries.  Plaintiff was evaluated by Dr. Erb and two
clinical psychologists to determine his suitability for treatment at
BIRC as a result of MVA#1.  Pursuant to the evaluation, Dr. Erb
recommended that plaintiff participate in an intensive day treatment
program, which was full-time over four weeks.  Citing concern with
missing too much work, plaintiff instead chose to enroll in BIRC's
"transition services" program, which consisted of seven sessions over
two months.  Plaintiff completed the treatment program for MVA#1 in
August 2006.

In July 2006, plaintiff received another mid-year review.  The
review noted a number of positive performance results for plaintiff,
including increasing "technical expertise," involvement in seminars,
and involvement in training, among other things.  Items that were

---

[1] "Outlook" is a technical periodical produced by Wah Chang.

5 - OPINION AND ORDER

noted as needing improvement included planning and workload management, learning the "properties and applications of Wah Chang materials," and getting "bogged down" when attempting to complete "failure analyses." Plaintiff indicated that he agreed with the appraisal.

On July 24, 2006, defendant approved plaintiff's "leave of absence" under FMLA/OFLA from June 21, 2006 through August 4, 2006. Second Kirsch Aff., Ex. 20, p.2.

On August 24, 2006, plaintiff suffered a second motor vehicle accident while on a business trip to Louisiana (MVA#2). In September, plaintiff filed a worker's compensation claim as a result of the accident.

In October 2006, plaintiff was issued a medical certification by his family physician, Dr. Craig McNabb, M.D., that listed his injuries as: T.B.I. (traumatic brain injury), cervical strain/sprain, and lumbar strain/sprain. The certification recommended the condition was likely to last three months, and that plaintiff would miss work intermittently to attend physical therapy (PT) sessions three times per week for eight weeks. Dr. McNabb issues a second certification in November 2006 which listed an identical diagnosis and PT schedule. Both certifications stated that the impairments should not keep plaintiff from performing one or more essential job functions.

Following MVA#2, plaintiff's business travel was apparently restricted. Plaintiff did not make any business trips in 2006

6 - OPINION AND ORDER

following MVA#2, although he had visited only four of the fifteen required customers for the year. Hosenpud Decl., Ex. 128, p.1. The parties disagree as to the reasons for the restriction.

On October 25, 2006, defendant approved plaintiff's "leave of absence" under FMLA/OFLA from September 19, 2006 through November 14, 2006. Second Kirsch Aff., Ex. 20, p.3.

On November 6, 2006, defendant approved plaintiff's "leave of absence" under FMLA/OFLA from September 19, 2006 through November 14, 2006. Id., Ex. 20, p.4.

In his next performance evaluation, the 2006 year-end review, plaintiff received an overall score of "2; Less than Full Standard." Plaintiff was placed on probation following the review, which required more detailed evaluations of his performance at mid and end-year reviews. On the review's PPA, plaintiff was appraised at "needs improvement" on two items: customer visits (he completed 4 of the required 15 visits) and datasheet updates. On the review's PTC, plaintiff was appraised at "needs improvement" on work quality, productivity, and dependability. Plaintiff indicated that he wished to appeal the appraisal.

On January 11, 2006, the same day as the review, plaintiff composed a memorandum which listed his objections to the review. Plaintiff argued that his failure to complete the required number of client visits was due to travel restrictions imposed by defendant, and therefore his appraisal should have been rated at "met expectations."

7 - OPINION AND ORDER

Plaintiff also argued that each of the other substandard ratings — quality, productivity, dependability — was due to his approved medical leave as a result of his injury, and therefore he should have been rated at "met expectations." Plaintiff alleged in the appeal that his "needs improvement" ratings were punitive in nature.

Plaintiff's appeal of the 2006 review was denied. Defendant informed plaintiff that the substandard ratings on quality, productivity, and dependability were not punitive. In an internal memorandum drafted the same day, defendant's human resources manager Eileen Boal stated that plaintiff was not being penalized for any absences due to taking protected leave, and that "he was not marked down for the times when he was unable to work." Boal's memorandum did not mention any travel restrictions. Defendant also inquired if plaintiff or plaintiff's doctor believed he required any accommodation in order to better perform his job. See generally Hosenpud Decl., Ex. 130, pp.1-5 (contains 2006 year-end review, appeal, denial of appeal, and Boal memorandum).

On February 8, 2007, plaintiff and Sutherlin completed an improvement plan for plaintiff, which itemized goals and schedules for customer visits, datasheets, quality, and productivity and dependability.

On February 9, 2007, Sutherlin authored a confidential internal memorandum titled "Stan Kirsch Issues." The memorandum was generally a 19-item list of grievances regarding plaintiff's job performance, including: plaintiff's excessive absences due to various ailments and

8 - OPINION AND ORDER

medical appointments, his insufficient workload that burdened other employees, failure to meet deadlines, failure to learn technical knowledge fast enough, inability to meet with customers because of his lack of knowledge, failure to work sufficient overtime, complaints about fatigue and headaches, and poor writing ability. See generally Hosenpud Aff., Ex. 143.

On April 17, 2007, plaintiff returned to BIRC for evaluation for injuries sustained in MVA#2. Erb noted plaintiff's apparent cognitive difficulties as a result of the accident. She made a number of recommendations: ergonomic evaluation of plaintiff's work site, limiting plaintiff's travel beyond the West Coast to two trips per year, returning to BIRC's transition therapy, reducing plaintiff's work week, and "cognitive strategies" such as alarms and reminders to assist him at work. These recommendations were eventually faxed to defendant more than two months after the evaluation, in early July 2007. The recommendations also included a "certificate of disability," which listed plaintiff's disability as post-concussion syndrome.

On May 3, 2007, plaintiff received a memorandum titled "re: performance issues" from Sutherlin. The memorandum was also sent to upper management staff. Generally, the memorandum was critical of plaintiff's lack of technical knowledge, his apparent lack of effort to improve his technical knowledge, his failure to handle his workload and complete projects satisfactorily, and his attendance and tardiness problems. The memorandum concluded with a reminder that plaintiff was

9 - OPINION AND ORDER

still on probationary status due to his last year-end review, and that his performance needed to improve by the end of the following month in order to continue in his position. See generally Hosenpud Decl. Ex. 147.

On May 24, 2007, per Dr. Erb's referral, plaintiff was examined by Carol E. Marusich, O.D., regarding his vision problems, which were eventually linked to cognitive fatigue.

On June 25, 2007, defendant received disability accommodation recommendations for plaintiff from Dr. Erb.

On June 29, 2007, plaintiff received a 2007 mid-year review. The review noted that plaintiff had improved somewhat in the months leading up to the review but was still performing unsatisfactorily. The review was critical of plaintiff's technical knowledge, ability to complete tasks, and failure to work sufficient hours to perform to defendant's satisfaction, and mentions Sutherlin's hesitancy to allow plaintiff to visit clients due to his lack of technical knowledge. Plaintiff also was given a document listing "essential functions of the Sr. Technical Services Engineer." See Hosenpud Decl., Ex. 152. The document stated that plaintiff agreed that the functions listed are essential, and that plaintiff was not meeting the essential functions. Id. Plaintiff was also given a list of accommodations which defendant agreed to make for the short term. These accommodations included ergonomic adjustments to plaintiff's workspace, a reduced work week and work load, and a reduced travel

10 - OPINION AND ORDER

schedule. The accommodations were set to expire on July 30, 2007, at which point defendant would re-evaluate plaintiff's performance.

On July 6, 2007, defendant approved plaintiff for intermittent FMLA/OFLA leave, beginning on April 17, 2007. No end date was listed for the intermittent leave. See Second Kirsch Aff., Ex. 20, p.5.

On August 13, 2007, Dr. Marusich prepared a vision report for plaintiff, and recommended a vision therapy program to treat vision-related symptoms including reading difficulty, headaches, and dizziness. Plaintiff's vision treatment continued until after his termination. See generally Erb Aff., Ex. 9.

In either October or December 2007, defendant requested information regarding plaintiff's condition from Dr. Erb. Defendant inquired whether Dr. Erb had noted improvements in plaintiff's cognitive abilities since June 2006, whether defendant could expect such improvements in the future, and when such improvements could be expected.

On January 22, 2008, Dr. Erb replied to defendant's inquiries. She said that she had noticed significant improvements in plaintiff's condition, that she believed plaintiff's impairments were cumulatively caused by both MVAs, that she expected continuing improvements, and that she was unsure when plaintiff could return to full-time work without medical restrictions on long-distance travel. Dr. Erb stated that she anticipated increasing plaintiff's hours to full time with

11 - OPINION AND ORDER

restrictions and then eventually releasing the restrictions.  See Erb
Aff., Ex. 11.

Also in January 2008, at the 2007 year-end review, plaintiff
received a "2; Less than Full Standard" overall score.  Plaintiff was
rated at "needs improvement" in substantially more areas than in any
previous review.  In the PPA section, plaintiff was rated below
expectations in safety, customer visits, 2 of 9 "market development"
items, failure analyses, 5 of 5 "technical presentations/publications"
items, and 1 of 2 tasks regarding the "help line."  In the PTC
section, plaintiff was rated "needs improvement" in job knowledge,
quality, productivity, judgment, and dependability.  Plaintiff
indicated that he agreed with the appraisal.

On February 14, 2008, plaintiff gave a deposition under oath in a
separate litigation related to MVA#1.  During the course of the
deposition, plaintiff stated that Sutherlin had been "fair" to him,
that all criticism of plaintiff had been fair, and that Wah Chang had
generally been fair to him.  See Second Hosenpud Decl., Ex. Q, pp.4-5.

On May 5, 2008, defendant sent further inquiries to Dr. Erb,
seeking clarification on the January correspondence regarding
plaintiff's work schedule, additional medical information, and a
likely timetable for plaintiff's recovery.

On May 12, 2008, plaintiff and Sutherlin had an "unscheduled"
meeting regarding plaintiff's performance.  According to a record of
the meeting written by plaintiff, Sutherlin asserted that plaintiff

had been released to work full time, that he had not been working sufficient amounts of overtime, and that plaintiff could not be expected to be released to travel when not working full time and/or lacking in technical knowledge. Sutherlin noted improvements in plaintiff's "enthusiasm" for the job within the month of April. See Hosenpud Decl., Ex. 197, pp.1-2.

On June 17, 2008, Dr. Erb responded to defendant's second set of inquiries. Erb's letter stated that she had released plaintiff to work full-time on January 22. Erb also stated that she had hoped plaintiff had been able to work 40 hours per week, and that she was no longer restricting plaintiff's travel. Dr. Erb asserted that plaintiff would still need more time before he could work overtime, that his recovery was progressing more slowly than she had anticipated, and that she was not certain if plaintiff would require permanent restrictions. See Erb Aff., Ex. 13. Six days later, on June 23, 2008, Dr. Erb clarified that plaintiff was allowed "to increase to 40 hours per week" as of that date. See id., Ex. 14.

On June 30, 2008, defendant, through Beth Hopson R.N. (defendant's occupational nurse), requested that plaintiff sign a medical release in order for Dr. Erb to share plaintiff's medical information with defendant's occupational medicine consultant, Dr. Pederson, at Good Samaritan Hospital. See generally Second Ford Aff., Ex. 4 p.6; Ex. 7, p.1.

On July 2, 2008, plaintiff received his 2008 mid-year review. The review outlined a number of tasks that plaintiff had not completed

13 - OPINION AND ORDER

by the assigned deadlines. Plaintiff's customer visits goal was
removed by Sutherlin "because he has yet to work 40hrs [sic] per week
on a regular basis and because of his lack of technical knowledge of
Wah Chang materials." Hosenpud Decl., Ex. 206, p.3. Sutherlin
concluded the review by observing that plaintiff's effort had improved
immediately before the evaluation, but that plaintiff failed to put in
the time necessary to perform adequately, lacked technical knowledge,
lacked sufficient writing skills, and his work generally lacked
quality. See generally id., pp.6-8.

Eight days later, on July 10, 2008, plaintiff was terminated at a
meeting attended by HR Manager Boal, Vice President of Commercial
Operations Parry Wilborn, and Sutherlin. Defendant maintains that the
reason for termination was that plaintiff "could not perform the
essential job functions." Def.'s Mem. in Opp. of Summ. Judg., p.13.

## II. STANDARD

Summary judgment is appropriate "if the pleadings, the discovery
and disclosure materials on file, and any affidavits show that there
is no genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).
The materiality of a fact is determined by the substantive law on the
issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809
F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is
determined by whether the evidence is such that a reasonable jury
could return a verdict for the nonmoving party. Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986).

14 - OPINION AND ORDER

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

The court must resolve all reasonable doubts as to the existence of genuine issues of material fact against the moving party and construe all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630. However, the Ninth Circuit has refused to find a genuine issue of fact where the only evidence presented is "uncorroborated and self-serving" testimony. Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996).

### III. DISCUSSION

Plaintiff alleges multiple federal and state claims against defendant. Defendant moves for summary judgment on all claims, submitting that any adverse actions taken against plaintiff were motivated only by legitimate, non-discriminatory business concerns. Defendant further submits that it did not interfere with plaintiff's rights under the FMLA nor retaliate against plaintiff for invoking the workers' compensation system. Plaintiff moves for partial summary judgment on the FMLA claim, on grounds that the record reflects that plaintiff was punished for taking approved FMLA leave.

A. ADA Disability Discrimination Claim

Plaintiff claims unlawful discrimination under the ADA and its Oregon counterpart on the basis of his alleged disabilities. See 42 U.S.C. § 12112(a); Or. Rev. Stat. § 659A.112; see also Washburn v. Columbia Forest Prod. Inc., 340 Or. 469, 473 (2006)(Oregon statute is designed to mirror the ADA); Snead v. Metropolitan Property & Cas. Ins. Co., 237 F.3d 1080, 1097 (9th Cir. 2001)(the standard for establishing the prima facie case of discrimination is identical under Oregon and federal law). Plaintiff claims that defendant discriminated against him by terminating him based on his impairments and by refusing to make reasonable accommodations to his position for a period of time after the accident.

The ADA makes it unlawful for a private employer to discriminate against a qualified individual with a disability under 42 U.S.C. §12112(a). A "qualified" individual is one who, with or without accommodation, can perform the essential functions of a job. 42 U.S.C. § 12111(8). A plaintiff employee establishes the prima facie case of disability discrimination by showing: (1) he is disabled within the meaning of the statute, (2) a qualified individual with a disability, and (3) was discriminated against because of the disability. Bates v. United Parcel Serv., Inc., 511 F.3d 974, 988 (9th Cir. 2007). For the purposes of this motion, defendant does not

challenge plaintiff's assertion of disability.[2]  Thus, the court
assumes without finding that plaintiff is disabled under the statute.
The parties dispute whether plaintiff was qualified and whether he was
discriminated against due to his disability.

### 1. Qualified Individual With a Disability

Plaintiff first alleges that he is a qualified individual with a
disability who can perform the essential functions of his employment
with or without accommodation.  Defendant maintains that plaintiff has
acknowledged that he was unable to perform the essential functions of
his job with or without accommodation, and therefore was not a
qualified individual.

For the defendant to prevail on summary judgment, it must show
that there is no genuine issue of material fact regarding the
essential functions of plaintiff's job, Morton v. United Parcel Serv.,
Inc., 272 F.3d 1249, 1255 (9th Cir. 2001), and that there is no
genuine issue of fact with regard to plaintiff's ability to perform
those functions with or without accommodation.  Bates, 511 F.3d at
994.  Drawing all inferences in favor of the non-movant, issues of
fact remain as to both the essential functions of plaintiff's job and
plaintiff's ability to perform those functions.

The determination of what constitutes the essential functions of
a job is generally a finding of fact.  Bates, 511 F.3d at 991, n.7.

---

[2] Defendant wishes to reserve the right to challenge plaintiff's assertion that
he is disabled within the meaning of the statute at trial.  Def.'s Mem. in
Supp. of Mot. for Summ. Judg., p. 16 n.5.

According to the ADA, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). However, such a written description is not necessarily conclusive, as an employer may not turn every condition of employment it adopts in a job description into a function of the job, let alone an essential function. See Cripe v. City of San Jose, 261 F.3d 877, 887 (9th Cir. 2001).

Defendant asserts that it has clearly articulated the essential functions of the position, including the requirements for travel time, overtime and technical knowledge, and that because plaintiff failed to perform the essential functions, his termination was not prohibited by law. Plaintiff responds that, generally, defendant has failed to present a definitive list of the essential functions of the Senior Technical Services Engineer, and therefore has no basis to assert that plaintiff was incapable of performing those functions.

Defendant contends that a document entitled "Position Description Questionnaire" supports its assertion of the position's essential functions. Hosenpud Decl., Ex 102. The list includes: responding to customer's technical inquiries, development of sales and business opportunities, presentation of technical trainings, participation in trade organizations and presentation of technical papers, and providing technical support for defendant's products. See id., Ex.

18 - OPINION AND ORDER

102, p.3. Defendant also submits a memorandum created for plaintiff's 2007 mid-year review that includes "the essential functions of the Sr. Technical Services Engineer." Hosenpud Decl., Ex. 102, p.1. The memorandum includes first five functions identical to those in the position description and also includes a requirement that "Approximately 25% of time is expected to be spent visiting customer sites . . . " Id. Defendant also relies on a document which appears to be an internal posting for the position which includes a 25% travel requirement. See Hosenpud Decl., Ex. 153. Notably, the description, memorandum, and posting do not reference overtime requirements. Finally, defendant argues that an undated handwritten note by plaintiff which appears to say in part "5-10hrs- of OT wk [sic]" is sufficient evidence to establish overtime requirements. See Hosenpud Decl., Ex. 209, p.2.

In light of the case law, and drawing all inferences in favor of plaintiff, the court finds that genuine issues of fact exist as to the essential functions of plaintiff's position, particularly with regard to travel and overtime requirements. As mentioned above, while position descriptions shall be considered in determining essential functions, but they are not necessarily conclusive. See Cripes, 261 F.3d at 887 (9th Cir. 2001). The court does not find defendant's lists to be unequivocal evidence of the essential functions. Rather, it is proper for a finder of fact to determine the weight that should be afforded these documents. Therefore, summary judgment is not appropriate.

In addition to the questions about the essential functions of the job, issues of material fact exist as to whether plaintiff was qualified and able to perform the job functions. Defendant relies heavily on the allegation that plaintiff admitted his inability to perform the essential functions of his job during his performance reviews and in a deposition in a separate litigation after plaintiff's termination.

     Q. (By Mr. Winkler) Okay. So generally I gather you would agree with that as of July 2, 2008, or thereabouts, your performance was substandard at work, is that right?

     A. (By plaintiff) Yes.

Hosenpud Aff., Ex. D, p.3.

However, construing all inferences in favor of the plaintiff, plaintiff's testimony could be interpreted as merely an admission that an assessment of his work as substandard was accurate, not an admission that he was necessarily unable to perform the job's essential functions. Moreover, even if the passage is given the meaning that defendant intends, plaintiff's assertion cannot be taken as an admission that he could not perform the essential functions of the position *with or without accommodation*. Accordingly, given the ambiguity which exists as to essential functions and whether plaintiff could perform those functions adequately with or without accommodation, plaintiff has made a showing fact sufficient to survive summary judgment.

## 2. Subjected to Discrimination on the Basis of Disability

Plaintiff next alleges that he was subjected to discrimination by defendant in two ways. First, he alleges that defendant refused to make reasonable accommodations to his position and work schedule for a period of time. Second, plaintiff alleges that termination of his employment in July 2008 was based on his disability. Defendant argues that it provided every accommodation that plaintiff requested, and that plaintiff's termination was based wholly on factors unrelated to his disability.

### a. Reasonable Accommodation

Under the ADA scheme, discrimination includes not providing reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability unless the accommodation would impose an undue hardship on the operation of the business, and discharge based on a disability. See 42 U.S.C. § 12112(a), (b)(1), (b)(5).

The parties agree that defendant provided at least some accommodation of plaintiff's disability, though they dispute when accommodation first occurred. Defendant eventually received a list of recommended accommodations from Dr. Erb on or around June 25, 2007. Hosenpud Aff., Ex. 152, p.4. The parties agree that defendant responded to Dr. Erb's suggestions by providing modifications of work schedule, workspace ergonomics, and travel. The record, however, is incomplete with regard to the suggested or actual duration of each of

21 - OPINION AND ORDER

these accommodations, and whether these accommodations were effective when implemented.

The ADA scheme contains an inherent tension in that the employer's obligation to provide reasonable and effective disability accommodation is limited by the employer's right not to eliminate essential job functions as such an accommodation. The Supreme Court has noted that an ineffective ADA accommodation is not an accommodation at all. See US Airways Inc. v. Barnett, 535 U.S. 391, 400 (2002). If an ADA accommodation prevents an employee from performing adequately, and the inadequate performance ultimately factors into the employee's termination, it is difficult to conclude that the accommodation was effective. Construing all inferences in favor of plaintiff, evidence in the record could allow a jury to infer that defendant's accommodations involving a shortened work week and limitations on travel actually prevented plaintiff from performing his duties and adversely affected plaintiff's performance evaluations. Thus, a jury could conclude that the accommodations offered by defendant were not effective, and therefore not accommodations at all.

For example, the record is unclear regarding whether defendant imposed travel restrictions after MVA#1 in 2005. If a travel restriction was imposed, the record is unclear whether the restriction was an accommodation requested by plaintiff, an accommodation provided without request by defendant, or a measure imposed by defendant for other reasons. Moreover, the record is unclear whether the alleged

travel restrictions negatively affected plaintiff's performance and factored into his termination.

Also, the record is unclear as to the rationale for the travel restrictions imposed after MVA#2. The record contains evidence of various reasons for the restrictions, including plaintiff's alleged lack of adequate technical knowledge, his reduced schedule, and disability accommodations based on Dr. Erb's recommendations. The rationales for the travel restrictions are questions of fact.

Defendant correctly asserts that an employer is not obligated to eliminate essential job functions as a reasonable accommodation, nor is an employer required to provide accommodation which would cause undue hardship. The court acknowledges also that an employer is not obligated to grant indefinite leave as a reasonable accommodation, as the Eleventh Circuit held in Wood v. Green, 323 F.3d 1309, 1314 (11th Cir. 2003). However, the Ninth Circuit is clear that "the duty to accommodate is a continuing duty that is not exhausted by one effort." Dark v. Curry County, 451 F.3d 1078, 1089 (9th Cir. 2006) (quoting Humphrey v. Mem'l Hosps. Ass'n., 239 F.3d 1128, 1139-40 (9th Cir. 2001)). Furthermore, employers must also consider reassignment to a vacant position for which an employee is qualified as an accommodation. See Dark, 451 F.3d at 1089-90.

As plaintiff has presented evidence that he was penalized in his reviews for not performing sufficient business travel, a fact finder must decipher which travel restrictions were disability accommodations, which were based on business necessity, and which, if

23 - OPINION AND ORDER

any, were punitive measures. Unresolved issues of fact remain as to when travel restrictions were placed on plaintiff, the motivations for those restrictions, whether the offered disability accommodations were effective, and whether restrictions factored into plaintiff's negative performance reviews and/or termination. Finally, an issue of fact exists as to whether defendant could have transferred plaintiff to a more suitable vacant position for which he was qualified given defendant's assertions that the accommodation provided did not produce satisfactory results. Thus, it is premature at this stage to grant summary judgment for defendant.

## b. Termination of Employment

Plaintiff also alleges that he was terminated based on his disability. Under the ADA scheme, once a plaintiff submits evidence that he was subjected to an adverse employment action based on his disability, the employer must present evidence of a legitimate non-discriminatory rationale for the adverse action. The burden then shifts back to the plaintiff to prove that the offered reason for the action was merely pretext for discrimination. See Snead, 237 F.3d at 1093.

Plaintiff argues that his unsatisfactory performance and subsequent negative evaluations which led to his termination were the result, at least in part, of his disability. For example, in a memorandum dated April 9, 2007 titled "Stan Kirsch Issues," Sutherlin listed 19 issue items, including allegations that plaintiff uses physical impairments such as fatigue and soreness related to his MVA's

24 - OPINION AND ORDER

as excuses not to complete work on time; that plaintiff has frequent absences from the workplace to attend doctor, counseling, and therapy appointments; and that plaintiff rarely works overtime, arrives early to work, or takes projects home with him. Casting all inferences in plaintiff's favor, such statements could allow a jury to infer that plaintiff's termination was motivated at least in part by factors arising from his disability.

Defendant maintains that plaintiff presents no evidence that plaintiff's disability was a factor in the termination decision, and offers a legitimate non-discriminatory rationale for plaintiff's termination: plaintiff's "inability to perform adequately the essential functions of his job," as evidenced by plaintiff's unsatisfactory performance reviews and internal memoranda detailing plaintiff's unsatisfactory performance. Def.'s Mem. in Supp. of Summ. Judg., p.22. Further, defendant contends that Sutherlin's list is evidence that any adverse action was a legitimate business decision based on plaintiff's inability to fulfill the essential functions of the job, that he had insufficient technical knowledge, and that he was missing work aside from protected leave. See generally Hosenpud Decl., Ex. 143. Clearly the dispute regarding Sutherlin's list involves a genuine issue of fact.

In any event, defendant's proffered non-discriminatory rationale alone does not entitle it to summary judgment. The Ninth Circuit has adopted a mixed-motive framework in analyzing adverse employment actions: "[t]he ADA outlaws adverse employment decisions motivated,

25 - OPINION AND ORDER

even in part, by animus based on a plaintiff's disability or request for an accommodation--a motivating factor standard." Head v. Glacier Nw., Inc., 413 F.3d 1053, 1065 (9th Cir. 2005).

Plaintiff has presented sufficient evidence for a jury to infer his termination was motivated at least in part by factors related to his disability. Plaintiff's evidence calls into question whether he was penalized for using protected leave, whether he was penalized for accepting travel accommodations, and whether he was penalized for performance deficiencies arising from his disability. Plaintiff has also presented evidence that defendant's inquiries into plaintiff's recovery prospects may have been a factor in the termination decision.

Therefore, as facts remain disputed as to the effectiveness of the accommodation provided, and with lingering questions as to the facts involving the cause of the termination action, the court simply cannot find that, as a matter of law, plaintiff's disability was not a factor in defendant's decision to terminate plaintiff's employment. Therefore, summary judgment is not appropriate.

B. FMLA Claim

Both plaintiff and defendant move for summary judgment on plaintiff's FMLA and OFLA claims. The FMLA and OFLA provide up to twelve weeks of unpaid leave to qualified employees who miss work for reasons enumerated in the statute, including a serious medical condition. 29 U.S.C. § 2612; Or. Rev. Stat. § 659A.103. Under the FMLA and OFLA employers may not "interfere with, restrain, or deny the

exercise of or the attempt to exercise" employees' rights to leave.
29 U.S.C. § 2615(a)(1); Or. Rev. Stat. § 659A.103.

Plaintiff alleges defendant interfered with his FMLA rights in
two ways. First, plaintiff claims that comments and conduct by his
supervisor constituted interference. Second, plaintiff claims that
requests for medical information made by defendant constituted
interference. Defendant denies these claims and suggests that the
bulk of plaintiff's evidence in support of these claims is a "sham."

1. "Sham" Affidavit Rule Applicability

Defendant alleges that plaintiff's affidavit in support of the
motion includes "sham" assertions of fact regarding comments and
conduct by plaintiff's supervisor, Richard Sutherlin. The Sham
Affidavit Rule sets out that a party cannot manufacture an issue of
fact by presenting an affidavit that contradicts prior sworn
testimony. See Van Asdale v. Int'l Game Technology, 577 F.3d 989, 998
(9th Cir. 2009) (quoting Kennedy v. Allied Mut. Ins. Co., 952 F.2d
262, 266 (9th Cir. 1991)). The Ninth Circuit has explained:

[i]t must be recognized that the sham affidavit rule is in
tension with the principle that a court's role in deciding a summary
judgment motion is not to make credibility determinations or weigh
conflicting evidence. Aggressive invocation of the rule also
threatens to ensnare parties who may have simply been confused
during their deposition testimony and may encourage gamesmanship by
opposing attorneys. We have thus recognized that the sham affidavit
rule "should be applied with caution."

Id. The Sham Affidavit Rule requires two prongs: first, that the
court makes a finding that any alleged contradiction between a
proffered affidavit and prior testimony is actually a sham, and second

that the contradiction is clear and unambiguous. See id. at 998-999. If both prongs are met, the court may strike from the record the inconsistent statements in the affidavit.

Defendant argues that the court should strike a number of assertions that plaintiff makes in his affidavit in support of his motion. Plaintiff's affidavit asserts that Sutherlin criticized plaintiff for taking leave and not putting in sufficient overtime, which had the effect of interfering with his FMLA rights. See Second Kirsch Aff. at ¶¶ 7, 8, 13, 16, 17, 19, 20, 22, 27. Defendant does not deny that Sutherlin made these criticisms, but submits that any such criticisms were appropriate and fair. However, defendant argues that plaintiff's affidavit contradicts plaintiff's prior testimony regarding the general nature of Sutherlin's treatment of plaintiff.

Defendant asserts, and the record reflects, that plaintiff previously testified at a deposition in a separate litigation that Sutherlin's supervision was fair, that his criticisms of plaintiff were fair, and that defendant had generally been fair to plaintiff. See, e.g. Second Hosenpud Decl., Ex. Q, p. 26-27. While plaintiff's deposition testimony appears to contradict plaintiff's subsequent affidavit, the affidavit is consistent with plaintiff's appeal of his 2006 year-end review, in which he asserted that Sutherlin's criticisms were unfair and/or punitive in nature.

In light of the consistency between the 2006 year-end review appeal and plaintiff's declaration, and noting the caution with which this test is to be applied, the court finds neither that the

28 - OPINION AND ORDER

contradictions at issue are clear and unambiguous, nor that they constitute a sham. Rather, the contradictions in this record lend themselves to credibility determinations which are more appropriately resolved by a fact finder. Plaintiff's declaration shall not be stricken.

## 2. Alleged Interference with FMLA Rights by Mr. Sutherlin

Plaintiff first alleges that defendant interfered with his rights under FMLA through the comments and actions of Sutherlin, plaintiff's supervisor. Under FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or attempt to exercise [any rights granted by FMLA]." 29 U.S.C. § 2615(a)(1). To establish an interference claim under FMLA, an employee must show that: (1) he exercised his rights under the Act, and employer responded with (2) disciplinary action that denied, interfered with, or chilled the exercise of his rights. See Bachelder v. Am. West Airlines, Inc., 259 F.3d 1112, 1124 (9th Cir. 2001)). Essentially, the plaintiff must prove by a preponderance of the evidence that the use of FMLA-protected leave was a negative factor in an adverse employment decision such as termination. See id. at 1125. Termination is not necessarily a prerequisite to a violation; the FMLA prohibits any disciplinary action that discourages or interferes with the right to take leave. See Xin Lui v. Amway Corp., 347 F.3d 1125 (9th Cir. 2003).

The parties agree that plaintiff exercised his rights under the FMLA. Plaintiff argues that his use of leave was a negative factor in

29 - OPINION AND ORDER

both his mid and end-of-year reviews, and also was a negative factor in the decision to terminate him. Defendant counters that plaintiff's protected leave was not a factor in either the reviews or the termination decision. Rather, contends defendant, to the extent that plaintiff's frequent absence from the workplace was a negative factor in his reviews and/or termination, only unprotected absences aside from FMLA leave were considered.

However, the court does not find unequivocal evidence that FMLA leave was or was not a negative factor in defendant's actions. While the record contains evidence that supports the inference that Sutherlin criticized plaintiff's apparent lack of work hours at various times, the record is unclear if Sutherlin's criticisms referred to protected FMLA absences or rather non-protected absences. Examples of Sutherlin's criticisms of plaintiff's are found in the 2006 and 2007 year-end reviews; the 2007 and 2008 mid-year reviews; and Sutherlin's 2007 memorandum entitled "Stan Kirsch Issues." Since plaintiff had taken approved FMLA leave during the time in question, it is unclear to which absences Sutherlin was referring.

Defendant nonetheless maintains that "the FMLA does not protect an employee from performance problems caused by the condition for which FMLA leave is taken." McBride v. Citgo Petroleum Corp., 281 F.3d 1099, 1108 (10th Cir. 2002). However, McBride is distinguishable. There, the court found that the employer did not violate FMLA when it did not restore an employee to her former position because her impairments precluded her from performing her job, not because she

took FMLA leave. Id. Here, by contrast, plaintiff alleges that his taking of FMLA leave was a factor in his termination action. As plaintiff has presented facts sufficient for a jury to make that inference, McBride is not dispositive on this issue.

Thus, the court is not persuaded that the termination action was due solely to plaintiff's inability to perform one or more essential functions of the position, as issues of fact abound. Summary judgment for either party on the supervisor interference issue is therefore inappropriate.

## 3. Alleged Interference with FMLA Rights by Prohibited Inquiries to Plaintiff's Treatment Provider

Plaintiff next argues that defendant interfered with his FMLA rights by violating the Department of Labor (DOL) regulations regarding medical inquiries to employee treatment providers. Under FMLA, employers may be privy to some but not all medical information requiring an employee's leave. 29 C.F.R. § 825.307(a). Generally, a standard WH-380 FMLA disability certification form is completed by a health care provider and contains information appraising the seriousness of the disability, the medical facts which support that appraisal, the approximate start date of the disability and its probable duration, the treatment required, the extent of leave required, and the any effect of the disability on an employee's ability to carry out the essential functions of their job. See e.g., Erb Aff., Ex. 5. The DOL regulations state that an employer may not

31 - OPINION AND ORDER

request basic information which is not contained Form WH-380.  See 29
C.F.R. § 825.306(b); 29 C.F.R. § 825.307(a).

However, an employer may request information for the purposes of
clarification and authentication of the disability certification.  29
C.F.R. § 825.307(a).  In addition, FMLA "does not prevent the employer
from following procedures for requesting medical information under the
ADA . . . Information received pursuant to these procedures may be
considered in determining the employee's entitlement to FMLA-protected
leave."  29 C.F.R. § 825.306(d).  Notably, the ADA allows employers to
make inquiries into the ability of an employee to perform job-related
functions.  29 C.F.R. § 1630.14(c); see also 42 U.S.C. §
12112(d)(4)(A) & (B).

Plaintiff alleges that defendant made prohibited inquiries in
December 2007 and May 2008.[3]  In 2007 defendant's medical center nurse,
Beth Hopson, R.N. sent an inquiry to plaintiff's provider, Dr. Erb,
asking Erb to answer three questions:

1) Since you saw Mr. Kirsch on 6/25/07, have you seen significant
   improvement in his condition?  Give examples if possible.
2) Can we expect a significant improvement in his cognitive
   ability, and his ability to concentrate from where he is now?
   If so, in what time frame?
3) Based on his last visit with you in November, when would you
   expect that he will be able to return to work full-time
   without restrictions?

See Erb Aff., Ex. 10, p.2.  Through Hopson, defendant again made
inquiries to Dr. Erb in May 2008.  Defendant asked if plaintiff was

---

[3] The court finds that plaintiff's consent to these inquiries is inapposite, at
least at this point, to the determination of the validity of the inquiries
under the DOL regulations.  Under FMLA, plaintiff cannot waive his rights.
29 C.F.R. § 825.220(d).

able to make up time lost due to medical appointments, or to work occasional overtime. Defendant also asked Dr. Erb to comment on the existence of any improvements in plaintiff's condition, her expectations of further improvement, if and when plaintiff would become medically stationary, and if she expected permanent medical restrictions in plaintiff's future. See Erb Aff., Ex. 12 p.1.

Plaintiff contends that these questions were beyond the scope of the certification form and thereby constituted interference with his FMLA rights. However, it is undisputed that defendant was providing at least some accommodation under the ADA, and it was therefore appropriate for Hopson to inquire into matters involving the effectiveness, sufficiency, and continuing necessity of those accommodations. Thus, the court finds that even if some of defendant's inquiries fall outside of the scope of WH-380, all of the questions nonetheless fall within the scope of appropriate ADA accommodation inquiry guidelines. Each inquiry made on behalf of defendant was directly related to the ability of plaintiff to perform job-related functions and/or the sufficiency and effect of plaintiff's accommodations. Therefore, the court denies plaintiff's motion for partial summary judgment on the prohibited inquiries ground.

In sum, the court must deny the parties' motions for summary judgment on the FMLA claim as genuine issues of fact exist as to whether Sutherlin's comments and conduct constituted interference with plaintiff's FMLA rights.

C. Workers' Compensation Claim

Defendant moves for summary judgment on plaintiff's claim for workers' compensation discrimination under Or. Rev. Stat. § 659A.040. To establish a prima facie case under the statute, a plaintiff must show: (1) he invoked the workers' compensation system; (2) he suffered an adverse employment action; and (3) his invocation of the workers' compensation system was a substantial factor in the adverse employment decision. Kirkwood v. Western Hwy. Oil Co., 204 Or. App. 287, 293 (2006).

Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). If the defendant is successful, then the burden returns to the plaintiff to show by a preponderance of the evidence that the alleged legitimate, nondiscriminatory reason for the employment action is merely a pretext for discrimination. Id.

The parties agree that plaintiff invoked the workers' compensation system after his second motor vehicle accident in August 2006, and that he suffered an adverse employment action when he was terminated in July 2008. The parties dispute whether plaintiff has presented a genuine issue of fact regarding the causal connection between the use of the system and the adverse action.

Plaintiff alleges that defendant retaliated against him after his worker's compensations claim by closely scrutinizing his work hours,

preventing him from travelling as a punitive measure, and subjecting him to continuing criticism. Plaintiff further alleges that plaintiff's retaliatory actions ultimately factored into the decision to terminate him. As explained above in the discussions of the ADA and FMLA claims, the record contains facts which could allow a jury to infer that restrictions on placed plaintiff's travel and criticisms by his supervisor arose from plaintiff's disability and factored into his termination. A jury could similarly infer, based on the record, that the travel restrictions and attendance criticisms were motivated at least in part by plaintiff's invocation of the worker's compensation system. These allegations alone are sufficient to establish a prima facie case.

Defendant has articulated a number of legitimate, non-discriminatory reasons for the adverse employment actions it took. Defendant submits that its scrutiny of plaintiff's work schedule was appropriate under the circumstances, that restrictions placed on plaintiff's travel were either justified by business necessity or due to accommodation of plaintiff's impairments, and that any criticisms that plaintiff received from his supervisor were justified and not motivated by discriminatory animus. Defendant also argues that even if it took adverse actions based in part on plaintiff's failure to adequately perform his job because of his medical issues, his termination was not related to medical issues and workers' compensation arising from the 2006 accident, but rather from medical issues arising from the 2005 accident.

Viewing the evidence in the light most favorable to the plaintiff, the court finds that a jury could reasonably infer that at least two of the defendant's adverse employment actions were pretext for discrimination based on plaintiff's protected status. As previously discussed, issues of fact remain as to defendant's motivation for plaintiff's travel restrictions and the effect of criticisms by defendant of his performance and attendance. In addition, the record simply does not establish an unequivocal factual basis for defendant's contention that the termination was based solely on performance issues caused by medical issues arising from the 2005 accident rather than the 2006 accident.

The questions of fact in the record surrounding the possibility of discriminatory motivation for those two actions alone preclude summary judgment. See Kotelnikov v. Portland Habilitation Center, 545 F. Supp. 2d 1137, 1140 (D. Or. 2008). Defendant's motion for summary judgment on the workers' compensation claim is therefore denied.

## D. Wrongful Termination Claim

Finally, plaintiff alleges the tort of wrongful discharge under Oregon common law. Generally, an at-will employee may be discharged at any time for any reason by an employer. See Estes v. Lewis & Clark Coll., 152 Or. App. 372, 381 (1998). The tort of wrongful discharge is the exception to that rule. Id. To establish a wrongful discharge claim, a plaintiff must prove that he was terminated because he either: (1) exercised a job-related right that reflects an important public policy; or (2) fulfilled some important public duty. See

Babick v. Oregon Arena Corp., 333 Or. 401, 407 (2002).  Defendant
submits that plaintiff has failed to present evidence that his
termination was related to an important public policy or duty.  In
light of applicable case law, the court disagrees.

Oregon courts have held to the proposition that insofar as ADA,
FMLA, and their Oregon statutory equivalents further important public
policy, violation of those Acts may give rise to a wrongful discharge
claim.  See Yeager v. Providence Health Sys. Oregon, 195 Or. App. 134,
141-43 (2004); Daoud v. Avamere Staffing, LLC, 336 F. Supp. 2d 1129,
1140-41 (D. Or. 2004).  Furthermore, while wrongful discharge claims
are not appropriate where adequate statutory remedies exist, Delaney
v. Taco Time Int'l, 297 Or. 10, 16 (1984), FMLA may not be adequate
because it does not provide damages for non-economic injuries such as
emotional distress.  Daoud, 336 F. Supp. 2d at 1141.  Plaintiff
requests damages for non-economic injuries including emotional
distress which he submits are not adequately covered by ADA or FMLA.
Defendant does not address the adequacy of the statutory remedies in
its briefs or pleadings.

Defendant's reply in support of its motion accurately points out
that plaintiff's wrongful termination claim relies almost wholly on
the success of his ADA and FMLA claims.  Given the court's denial of
defendant's motions for summary judgment on the ADA and FMLA claims,
however, reliance on the failure of those claims for dismissal of the
wrongful discharge action is unavailing.  Furthermore, defendant does
not offer any evidence that the ADA or FMLA statutory remedies

37 - OPINION AND ORDER

adequately address plaintiff's non-economic damages.   Summary judgment
on the wrongful discharge claim is therefore denied.

## IV.   CONCLUSION

Defendants' Motion for Summary Judgment (doc. 18) is DENIED, and
Plaintiff's Motion for Partial Summary Judgment (doc. 19) is DENIED.

IT IS SO ORDERED.

Dated this __30th__ day of September, 2011.

Ann Aiken
Chief United States District Judge

38 - OPINION AND ORDER